**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAUL M. BROWN,

        Plaintiff,

                                       CASE NO. 2:15-cv-11061

v.

                                       HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**OPINION AND ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS
AND ADOPTING THE REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

      Before the Court are Plaintiff Paul M. Brown's objections to the Magistrate

Judge's Report & Recommendation.  (Doc. 17).  Magistrate Judge Mona K. Majzoub

considered the parties' cross motions for summary judgment and, on April 12, 2016,

entered an R&R.  (Doc. 16).  In the R&R, Magistrate Judge Majzoub recommended that

the Court grant Defendant Commissioner of Social Security's motion for summary

judgment (Doc. 15) and deny Plaintiff's motion for summary judgment (Doc. 13).  For

the reasons that follow, the Court **OVERRULES** the Plaintiff's objections and **ADOPTS**

the R&R.

**II.   STATEMENT OF FACTS**

As the parties have not objected to the R&R's recitation of the facts, the Court adopts that portion of the R&R.  (See Doc. 16, pp. 2-3.)

III.   **STANDARD OF REVIEW**

   **A. Objections to a Magistrate Judge's R&R**

A district court must conduct a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement."  Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006).  Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the

magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

### B. Standard of Review Applicable to Social Security Cases

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the Commissioner or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

3

**IV. DISCUSSION**

As an initial matter, Defendants correctly observe that Plaintiff's objections to the R&R largely reiterate the same arguments advanced in his Motion for Summary Judgment. Nonetheless, the Court interprets the present objections as generalized claims that the R&R does not adequately address the issues raised in that motion.

As determined in the ALJ's decision, Plaintiff suffers from hemophilia, hepatitis C, and degenerative joint disease. (Tr. 22). Hemophilia is a congenital disorder caused by missing or deficient clotting protein. Individuals with hemophilia often experience spontaneous bleeding episodes ("bleeds"), either internally into their joints and muscles or externally due to cuts. According to Plaintiff, he frequently experiences bleeds in his joints, particularly in his ankles. Plaintiff's condition has resulted in hemophilic arthropathy, or severe joint degeneration. (Tr. 521-23, 527). Although Plaintiff's treating sources have recommended that he undergo surgical cheilectomy or ankle fusion, he has been unable to do so because of conflicts with his parole and residence at a halfway house. (Tr. 527, 543).

The core of Plaintiff's objections is that the Administrative Law Judge ("ALJ") erred in discrediting Plaintiff's testimony regarding the impact his medical impairments have on his physical abilities. Plaintiff claims that the ALJ selectively cited evidence supporting the ultimate denial while ignoring contrary evidence. In particular, with respect to Plaintiff's activities of daily living, the ALJ noted that Plaintiff was able to drive several times per week, grocery shop twice per month, prepare simple meals, and engage in small household repairs and chores. (Tr. 24). However, Plaintiff highlights that he must use a shower chair, usually makes only sandwiches, and sometimes

4

needs assistance performing light household chores.  (Tr. 139-40).  He also claims that he often must use a cane or wheelchair to ambulate during bleeding episodes.  (Tr. 144).

The Court finds that the ALJ's characterization of Plaintiff's activities of daily living does not misrepresent his alleged functional abilities.  The ALJ quantified many of Plaintiff's cited activities, such as driving an estimated 20 to 30 miles per week, preparing *simple* meals, and engaging in *small* household repairs.  It is unclear from Plaintiff's argument how the fact that the ALJ did not specifically mention that Plaintiff uses a shower chair affects the ultimate outcome of the present case.  See Kepke v. Comm'r of Soc. Sec., No. 15-1315, 2016 U.S. App. LEXIS 601, at *26 (6th Cir. Jan. 12, 2016) (holding that where an ALJ's imprecise characterization of a limitation makes no difference in the ultimate outcome, that error is immaterial and harmless) (citing Potter v. Comm'r of Soc. Sec., 223 F. App'x 458, 463-64 (6th Cir. 2007)).  Further, the ALJ addressed Plaintiff's allegations regarding his need for a cane: "Despite his testimony and the report of Dr. Said, the record as a whole does not support the need for a cane. There was no mention of any ambulatory assistance throughout his two-year incarceration, and the claimant was able to work several jobs at the light and medium exertional levels, which required him to be on his feet and ambulatory."  (Tr. 28).  As noted in the R&R, the ALJ observed that Plaintiff did not use a cane when he appeared at the Field Office or at the hearing.  (Tr. 27).  Finally, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

Therefore, the ALJ did not err in assessing Plaintiff's credibility with respect to his activities of daily living.

Plaintiff also claims that the ALJ ignored opinions rendered by Consultative Examiner A. Said, M.D., and Nurse Practitioner Angela Lambing. To the contrary, the ALJ considered in great detail both of these opinions. (Tr. 26-27). With respect to Dr. Said's report, the ALJ assigned it limited weight because it did not provide a function-by-function assessment and because its conclusion that "jobs which require mobility may not be appropriate" was "vague and open to interpretation. (Tr. 27). Interestingly, Dr. Said also opined that Plaintiff could perform jobs requiring a sitting position, which is reflected in the ALJ's Residual Functional Capacity limiting Plaintiff to sedentary work. (See Tr. 538). Likewise, with respect to Ms. Lambing, the R&R discussed the ALJ's conclusion that she was not an acceptable medical source as defined in 20 C.F.R. § 404.1513(a). (Doc. 16, n.2). Further, the ALJ found that the Plaintiff's self-described functional abilities were not as limited as one would expect compared to the limited mobility identified by Ms. Lambing. (Tr. 26). Nonetheless, her opinion that a job involving prolonged standing would be too difficult for Plaintiff was accounted for in limiting Plaintiff to sedentary work. (Id.)

Plaintiff contends that the ALJ erred in discrediting Ms. Lambing's opinion based on the fact that she is not an acceptable medical source. According to Social Security Ruling ("SSR") 06-03p, under certain circumstances, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Factors weighing in favor of an opinion rendered by a non-acceptable medical source include consistency of

6

the opinion with other evidence, how well the source explains the opinion, and the degree to which the source provides evidence supporting the opinion.  SSR 06-03p. Here, the ALJ determined that Ms. Lambing's opinion was not consistent with Plaintiff's treatment history, work history, or adaptive level of functioning.  (Tr. 26).  Plaintiff has offered no argument demonstrating that this conclusion was erroneous.

Next, Plaintiff maintains that the record as a whole demonstrates a history of spontaneous bleeds resulting in an inability to work.  Ms. Lambing advised Plaintiff to rest and elevate his joints for the duration of bleeding episodes, with gradual return to weight bearing.  (Tr. 543).  Accordingly, Plaintiff claims that he would be forced to miss work due to bleeding episodes occurring one to two times per week.  (Tr. 41).  He points to medical records documenting complaints of bleeds and severe pain in his joints. These records include a right shoulder bleed in September 2007 (Tr. 162), right knee pain in November 2007 (Tr. 163) and January 2008 (Tr. 167), and advice not to bear weight on his knee in November 2008 (Tr. 165).  Plaintiff also notes that while he was incarcerated, he avoided exercise in order to avoid bleeds, was assigned to light duty jobs, and was assigned to a lower bunk.  (Tr. 235, 247).  The ALJ expressly noted these records in the decision.  (Tr. 24-25).

In 2007 and 2008, Plaintiff was receiving only episodic treatment, but he transitioned to prophylactic treatment beginning in March 2009.  (Tr. 170).  In May 2009, Plaintiff reported to his treating physicians that he experienced right shoulder bleeds once every two months and ankle bleeds approximately three times per month (Tr. 175).  In October 2010, Plaintiff reported occasional spontaneous bleeding twice monthly, most frequently on the mornings his factor infusions were due.  (Tr. 178).  One

7

year later, in October 2011, Plaintiff reported to his treating physician that he had experienced no breakthrough bleeds in his joints since he started receiving a different prophylaxis factor after being released from incarceration to a halfway house one month prior.  (Tr. 521).  In December 2011, Plaintiff reported that he experienced bleeds only once per month or with excessive activity.  (Tr. 527).  While he was incarcerated, MDOC clinic progress notes largely indicated that he tolerated his factor infusions well (see, e.g., Tr. 289-93) that physical examinations were normal (Tr. 361, 391, 425), and that his hemophilia and hepatitis C were under "good control" (Tr. 296).

The ALJ summarized this information and additionally noted that although Plaintiff "variably complained of joint pain and swelling, especially in the ankles . . . the records also indicate these symptoms improved following infusion, ice, pain medication, and an accommodation to the bottom bunk."  (Tr. 25).  Therefore, the ALJ properly analyzed all evidence and simply concluded that it did not support a determination of disability.  Indeed, in light of the successfulness of Plaintiff's infusion therapy and the additional reasons discussed in the R&R, there is substantial evidence supporting the ALJ's determination.  Even if the Court determined that "there exists in the record substantial evidence to support a different conclusion," it may not reverse the Commissioner's decision merely because it may disagree with the conclusions.  See McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006).

Finally, Plaintiff contends that the ALJ erred because the Vocational Expert testified at the hearing that an individual with impairments causing him to be off task twenty percent of the workday would be precluded from competitive employment.  (Tr.

8

51).  However, Plaintiff has supplied no medical opinions stating that he would be off task for a significant portion of the day.

## V.  CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.


**IT IS SO ORDERED.**

Date: July 27, 2016                              s/Marianne O. Battani
                                                 MARIANNE O. BATTANI
                                                 United States District Judge